V. M. Stewart et al. *vs.* Thomas B. Ives et al.

The vendor of land, who takes no security for the purchase money, has a lien upon the land sold; and this lien, unless waived by some act of the party, continues as long as the land remains in the hands of the original purchaser.

The vendor's equitable lien passes with the land, into the hands of a sub-vendee, who purchases with notice of such lien.

The vendor's equitable lien extends to the purchase money for the land sold, in the hands of the sub-vendee, as well as to the land itself, and to the same extent; the purchase money cannot, therefore, be reached, when it has been either paid over, or when the second purchaser has become bound to pay to third persons before notice.

This case was brought, by writ of error, from the superior court of chancery, sitting at Oxford.

The facts of the case are, in substance, as follow :

James Stewart, about the 1st of April, 1836, sold to Ives a tract of land in Yalobusha county, executed to him a title bond, and received two promissory notes, each for $1040, to secure the purchase money.

Ives, before he obtained a title, sold the same land, together with other tracts, to Torrance and Smith.

James Stewart died, and the complainants became his heirs and administrators.

Torrance and Smith were anxious to get a title so as to mortgage the land to the Union Bank, and urged Ives to procure the title from the complainants.

Ives did procure the title.   A decree of the probate court of Jefferson county was made, which, reciting that Ives had performed the condition of the title bond, required the complainants, as administrators of James Stewart, to make a deed to Ives, which they did, accordingly, on the 26th January, 1838.

The complainants alledge that they were induced to do this by the promise of Ives to give them a good negotiable note, with ample security, or else would instruct Messrs. Torrence and Smith, out of the sum they then owed him, Ives, to retain suffi-

cient to pay the said complainants the sum due to them.   That he failed in these promises.   That, upon the faith of the latter promise, they delivered him the deed to the land.

Ives confessed a judgment to Victor N. Stewart, for the use of the complainants, for the purchase money due on the two notes, in Yalobusha circuit court, on the 19th Sept. 1839.   Ives is insolvent, and the money cannot be made on the execution.

Ives and wife, on the 3d day of September, 1838, conveyed the tract of land to Torrance and Smith, who now hold the legal title.

Torrance and Smith, at the time they received a title from Ives, were indebted to him, on account of that and other tracts of land, about $6000.

The complainants state that Ives, after he had failed to give the negotiable note, with security, promised that he would instruct Torrance and Smith to retain, out of the $6000 due Ives, an amount sufficient to pay the debt to Stewart.   Torrance and Smith deny that any such instruction was given, and the answer of Ives admits that it was not.   Torrance states that he was anxious to arrange so much of the debt due Ives as would cover the debt due from Ives to Stewart, by giving a note, well secured, for the amount, to Stewart.   That he applied to the agent of Stewart for that purpose, who declined taking it, stating that the debt to Stewart had been arranged by Ives.

Anderson and Driver had sold to Ives a number of tracts of land, and an interest in a ferry at Troy, for $20,000, and held his notes for that amount, he holding their title bond. Among these lands, was one tract which Ives had sold to Torrance and Smith.   Ives, to get a title to that tract of land, and to pay, in part, his debt to Anderson and Driver, agrees with them that if they would convey said tract of land to Torrance and Smith, they, Torrance and Smith, might execute their notes for the amount due from them to Ives, about $6,000, to Anderson and Driver, which amount should be endorsed on the notes for $2,000, executed by Ives to Anderson and Driver.   This agreement was made in writing on the 13th December, 1838.   In pursuance of it, Anderson and Driver, about the same time re-

ceive the notes of Torrance and Smith for $6,000, credit that amount on the notes they held against Ives for $20,000, and on the 3d of January, 1839, execute a deed for the tract of land, to Torrance and Smith.

In March, 1840, the complainants filed their bill to enjoin the collection, by Anderson and Driver, of so much of one of the notes executed to them by Torrance and Smith, as would cover the debt due from Ives to Stewart, for the purchase of the tract of land first mentioned, and ask a decree that Torrance and Smith be decreed to pay that amount to them.

Anderson and ·Driver, in their answers, expressly deny any notice whatever, of the claim of the complainants against Ives, until the filing of the bill, or a short time before. In fact, no such notice is charged in the bill, either as to Anderson and Driver, or Torrance and Smith. On the contrary, it appears that Torrance and Smith were informed, both by· Ives and the agent of the complainants, that the purchase money had been arranged by Ives, and that there would be no difficulty about it.

It is not deemed necessary to notice the pleadings any farther, or to state more at length, the answer of Torrance and Smith, or of Ives, since all the facts of the case, as admitted in argument, and inferrable from the record, appear above.

The bill was dismissed by the chancellor, on final hearing, and, from that decree, a writ of error has been prosecuted to this court. `

*E. S. Fisher*, for plaintiffs. in error.

1. The first question for consideration is, whether the complainants have a right to invoke the aid of a court of equity, in order to have their claim of $2405, satisfied out of the $6000 by the Messrs. Torrance and Mrs. Smith, agreed to be paid to Anderson and Driver? It is admitted, that to entitle the complainants to do so, they must establish a right superior to that of Anderson and Driver.

What then are the bases of the plaintiffs' claim? They claim, first, by virtue of a lien, which a court of equity allows to exist in favor of the vendor of land, not only against the vendee,

but against purchasers for a valuable consideration, with notice, and that this lien attaches as well to the money arising from a sale of the land by the vendee, as to the land itself, which is in the hands of the vendee; and, second, by virtue of an assignment, valid in equity, from Ives to the complainants.

The land in this case, was, by James Stewart deceased, sold to Ives, and by Ives, sold to Messrs. Torrance and Smith upon a credit. The question here to consider is, whether James Stewart, or his legal representatives, had a lien upon this land after it was sold to Messrs. Torrance ? They had a lien which they might enforce, either against the land or money, at any time before payment by Messrs. Torrance. The authorities on this head are full. " The vendor has a right, by virtue 'of his lien on the land, to call on the assignee of the vendee, who has taken possession of the land under the contract, to pay the purchase money, or yield up the land, or to have it sold for the benefit of the vendor." 6 Johns. Ch. R. 402. The rule goes still further, and says, that " when the vendee has sold the estate to a *bona fide* purchaser without notice, if the purchase money has not been paid, the original vendor may proceed against the estate for his lien, or against the purchase money in the hands of such purchaser for a satisfaction, for in such a case the latter, not having paid his money, takes the estate *cum onere*, at least to the extent of the unpaid purchase money." See 2 Story's Com. Equity, 483. 2 Tucker's Com. p. 442, and authorities therein cited. And this proceeds upon the ground that, where trust money can be traced, it shall be applied to the purposes of the trust. Ibid. There is, then, no doubt about the lien of the complainants, either upon the land, or money, in the hands of Messrs. Torrance, at any time before payment by them.

2. The second question is, have the complainants done any act renouncing said lien ? Does their consent to receive a promissory note, release the said lien ? Most certainly not, because the note was never given. Does their consenting for Ives to cause to be left in the hands of the Messrs. Torrance and Smith, the purchase money, ($2080) operate to discharge-

their lien? Most certainly not, because such consent did not in any manner alter the lien, as the agreement did not differ from it; and as the complainants had already a lien upon the money to the amount of their debt, they must make some agreement releasing the money itself before they could release their lien upon it; in other words, they must have some other source to look to for payment of their claim, than the money in the hands of the Messrs. Torrance and Smith, if they released their lien. According to the doctrine laid down in the authorities, (2 Tucker, 442, and 2 Story, 483,) I conceive it to be an incontrovertible proposition, that when a person releases the lien on a thing, he releases the thing itself; and that when he releases the thing, he releases the lien on that thing. Now in this case, did the plaintiffs, by their agreement, release the money upon which they clearly had a lien? It is very clear that they did not. The principle of law is very clear, that if the grantor by his deed conveys to the grantee just such an interest as the law already gives him, the contract must yield to the superior force of the law. So it is in the case of a will where a man gives to his child, just such an estate as the law gives him, the devise yields to the law.

But let us notice this agreement between Ives and the complainants. This agreement amounted to an assignment of the complainants' demand, out of the said $6000, in the hands of the Messrs. Torrance and Smith, even if there was no lien then existing upon it.

" An order to pay a debt out of a particular fund, is an assignment of the fund *protanto*, and gives the creditor, who receives the order, a specific, equitable lien upon such fund." *Bradley* v. *Root*, 5 Paige, 633 And as to the manner of the assignment, there can be no objection on that head, as the authorities are equally clear and explicit. " An assignment of a debt may be by parol as well as by deed." 2 Story 311. § 1047.

3. The question now presents itself, if the complainants are entitled to have their debt paid out of said money, ($6000,) what right have Messrs. Anderson and Driver to the same money, whilst there was a prior claim existing, which by law, equity and

express contract, ought to be first satisfied out of it? I understand the rule in equity to be, that the assignee of a chose in action, takes it subject to all the equities which existed against it, while it was in the hands of the assignor.

It is contended that the equities between complainants and Anderson and Driver are equal, and that the latter have the law on their side.   This admission we are by no means prepared to make; but only admit for a moment that the equities are equal between the parties, then there is one other principle to be considered, to wit: Who have the prior equity? why, complainants have—" Where two equities are equal, the prior equity shall prevail." 2 Tucker, 443.  2 Story's Equity, 481.  The same doctrine is recognized in 5 Paige, 640.  But we deny that Messrs. Anderson and Driver have the law on their side, when all the circumstances are developed.   We know of no rule of the common law, authorizing the assignment of a mere debt, or chose in action; and this case does not come within the provision of the statute.   The authority given by Ives in favor of Anderson and Driver, authorizing Messrs. Torrance and Smith to pay said $6000 to the said Anderson and Driver, was but a mere equitable assignment of his interest in the said debt.  It was not such an instrument as a court of common law could have enforced, if Messrs. Torrance and Smith had not chosen to comply with its terms.   Thus we find by taking Mr. Anderson's answer and exhibit together, he has no legal advantage over complainants.

It is contended by Mr. Anderson in his answer, that complainants have acknowledged the payment of the said $2080 in their deed to said Ives.   It is not true that they have acknowledged payment in said deed.   The language in said deed is for, and in consideration, &c. of $2080, " to be paid," " have sold," &c. Mr. Anderson further states in his answer, that he gave a consideration for said debt, and he and Driver made a deed to Messrs. Torrance and Smith, for one eighth of the land, worth $1111, according to the answer of Ives, (which must be received as evidence, as we shall presently show,) and that he released to Ives the interest he and Driver had in the town of Troy

Stewart et al. *v.* Ives et al.

and the ferry. This latter charge is positively denied by Ives's answer.

We contend that Ives's answer, which confesses the whole bill to be true, ought to be received as evidence against Anderson and Driver, and why? because they claim through Ives— they are *his* assignees, and any admission he makes is binding upon them. 2 Tucker's Com. 480. Mr. Anderson also states in his answer, that his reason for wishing the Messrs. Torrance and Smith to execute their notes directly to him, was to avoid any offset that might be brought in against Ives. This shows that he at least doubted Ives's right to assign the debt.

It will here be remembered, that a great portion of Mr. Anderson's answer is affirmative matter, and should have been by him proved.

It is contended that the giving of the notes, by the Messrs. Torrance and Smith, to Anderson and Driver, was a payment to Ives. This position cannot be sustained. Suppose they had given their notes to Ives, would not complainants'. right, to have their claim satisfied, out of the money agreed to be paid, prevail. Most certainly. Anderson and Driver have in their hands all the security they ever required of Ives under their original contract. They cannot be considered purchasers for a valuable consideration, because they have not made Ives any deed to any of said lands. It may be true that they may have entered a credit on one of Ives's notes to them, but it is perfectly in the power of a court of equity, to cancel this credit, and to reinstate the obligation. Ives sold this land to Messrs. Torrance and Smith for $4444 $\frac{40}{100}$, making a clear profit of $2220. Would it not be gross injustice for Anderson and Driver to be allowed to postpone the claim of complainants under these circumstances?

It is a rule in equity, that every case stands upon its own peculiar circumstances. Under all the circumstances attending this case, would it be consistent with equity and good conscience for Messrs. Anderson and Driver, to have the whole $6000, and postpone the complainants? If the complainants are post-

poned, will it not be furnishing Ives with the sum of $4444 $\frac{44}{100}$ for which he sold said land to Messrs. Torrance and Smith, to pay a debt which he owed Anderson and Driver? How will this principle accord with that principle of equity, which says, that one man shall not profit by another's loss? Will it not be taking from the complainants, the amount of their claim, and giving it to Anderson and Driver? Ives, by the profit which he made by the sale of said land, has been enabled to pay Anderson and Driver, at least $2200 more than he could have paid, if he had not made the purchase from the said James Stewart, deceased.

*W. Y. Gholson,* for Anderson and Driver.

The bill, in this case, was filed to enforce a vendor's lien for unpaid purchase money. From the facts it most clearly appears that the lien in this case has been waived and lost. It certainly cannot be established against the defendants, Anderson and Driver, who claim the fund in dispute, and who had no notice of any such lien at the time they acquired their right.

It appears that the complainants are estopped from asserting any such lien, they having been parties to a proceeding before the probate court of Jefferson county, in which a decree was made requiring them to make title, and reciting that the condition of the title bond had been complied with on the part of the vendee. This condition could only have been the payment of the purchase money. It would be a fraud in them now to say that though they agreed such entry should be made of record, the purchase money had not actually been paid. This proceeding, at least, amounts to an express waiver of any equitable lien.

There are two other views in which this case may be considered, either of which is conclusive in favor of the right of Anderson and Driver, to collect the note in controversy. 1. Torrence and Smith were indebted to Ives in the sum of $6000. Anderson and Driver were induced to take this claim and give Ives credit for the amount on the notes they held against him, and also convey a tract of land. They go to Torrance and Smith to ascertain if the debt be due, who give them the stron-

gest promise that it is, by executing notes for it directly to Anderson and Driver.    Can Torrance and Smith now say, or the complainants for them, that the debt was not due?    Both are estopped from making such objection, so far as Anderson and Driver are concerned.    This comes, most clearly, within the principles of the decisions in *McMurran* v. *Soria*, 4 Howard, 154.    *Hamer* v. *Johnson* et al. 5 How. 598.    1 Leigh's Rep. 1.

2. The assignee of a note, takes it subject to any equity of the maker that attached to it in the hands of the payer, but he does not take it subject to the latent equity of a third person not a party to it.    *Muncy* et al. v. *Lilburn*, 2 Johns. Ch. Rep. 441.    *Moore* v. *Holcombe*, 3 Leigh, 597.

Now, in this case, there was a debt due from Torrance and Smith, to Ives, who transferred his claim to Anderson and Driver, for a valuable consideration, and they took the notes of Torrance and Smith for the amount.    Admitting that these notes are subject to any equity between Ives and Torrence and Smith, (which, as above shown, cannot be true,) yet, certainly, they are not subject to a latent equity resting in the complainants, of which Anderson and Driver had no notice whatever.

The facts of the case of *Moore* v. *Holcombe*, 3 Leigh, 597, will be found very similar to the facts of the present.    That case was cited and relied on by his honor, the chancellor, in giving his opinion dismissing the bill.    It is confidently submitted that the decision should be affirmed.

Mr. Justice CLAYTON delivered the opinion of the court.

James Stewart, in the year 1836, sold a tract of land in the county of Yalobusha, to Thomas B. Ives, and gave him a bond to make title when the purchase money should be paid.    The vendor afterwards died, leaving the complainants his heirs at law, and they also became his administrators.    They procured an order from the probate court of Jefferson county, decreeing them to make a deed for the land so sold.    The deed was subsequently made and delivered, by their agent, to Ives, to enable him to convey to Torrance and Smith, to whom he had sold it. No money was paid by Ives, but to procure the deed from the

agent, he promised to give his note, with good personal security, or to direct Torrance and Smith to pay the amount out of what they owed him.   The deed was then delivered to Ives, and he executed a conveyance to Torrance and Smith.   It appears that Torrance and Smith were, at one time, informed of the promise of Ives, to substitute them as debtors, in his place, to Stewart; but before the conveyance to them, they were informed by the agent of the complainants, that Ives had made a different arrangement of the whole matter with him, and that they might proceed to complete their contract with Ives.

Ives was also indebted in a large sum to Anderson and Driver, for the purchase of land, a part of which he had also sold to Torrance and Smith.   In order to obtain a deed from Anderson and Driver, for the land he had sold to Torrance and Smith, and to some other, he, about the same time, induced Torrance and Smith to execute their notes to Anderson and Driver, for all they owed him, received a credit for the amount on his notes to Anderson and Driver, and gave an acquittance to Torrance and Smith.

The bill was filed against these several parties, by the complainants, with a view to subject the notes of Torrance and Smith, in the hands of Anderson and Driver, to the payment of their claim.   The bill was dismissed by the chancellor, and from that decree a writ of error was prosecuted by this court.

The vendor of land, who takes no security for the purchase money, has a lien upon the land sold; and this lien, unless waived by some act of the party, continues as long as the land remains in the hands of the original purchaser; and it also passes with the land, into the hands of a sub-vendee, who purchases with notice of such lien.   *Fish* v. *Howland*, 1 Paige, 20.   In case of a re-sale, this lien will extend to the purchase money in the hands of the sub-vendee, as well as to the land itself; but the lien on the fund cannot be more extensive than on the land. The lien cannot attach to the land, in the hands of a purchaser, for valuable consideration, without notice, neither can the money be reached when it has been paid over, or when the second purchaser has become bound to pay to third persons before notice. *Moore* v. *Holcombe*, 3 Leigh, 597.

To apply these principles to the case before us. Torrance and Smith had no notice of any equitable lien of the complainants, at the time of their purchase from Ives. They received a deed without any such notice. They then executed their notes to Anderson and Driver, and procured a discharge from Ives, who also obtained a credit for the amount from Anderson and Driver; and this was all done before the complainants gave notice of their equity. This was equivalent to a payment to Ives, for they discharged so much of his debt, and came under a new liability to his creditor. Notice, after this, came too late.

If the complainants were induced to make a deed, by the promises of Ives, which he failed to perform, it is their misfortune. But it cannot give them a right to follow the fund into the hands of Anderson and Driver, who took it without notice of their equity, and without fraud, and who are, consequently, entitled to hold it.

Besides all this, the complainants abandoned their lien upon the land, and do not, in their bill, seek to enforce any claim against that, but only to subject the purchase money due from the sub-vendees. We think this cannot be done, and that the lien, as to both subjects, is equally gone. See 3 Leigh, 607.

Upon the whole, we think the decree of the chancellor, dismissing the bill, is correct, and must be affirmed.

*Decree affirmed.*

By Mr. Justice Turner.

The decree of the chancellor must be affirmed. The answers deny all the equity of complainant's bill, and there is no proof.

When Stewart's agent made the deed, it was done with a view to other security. Ives defrauded Stewart by false promises; but innocent purchasers, third persons, cannot be made to suffer for this.